IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES WAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 09 C 473 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| BURLINGTON NORTHERN SANTA FE | ) |
| RAILROAD COMPANY[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

James Wand filed a two-count complaint against BNSF Railway Company ("BNSF") for injuries suffered while working for BNSF as a conductor. Count I alleges a violation of the Safety Appliance Act (the "SAA"), codified at 49 U.S.C. § 20301 *et seq.*, and Count II is a claim for negligence, both brought pursuant to the Federal Employers' Liability Act ("FELA"), codified at 45 U.S.C. § 51 *et seq.*[2] Before the court is Wand's motion for partial summary judgment on BNSF's liability and BNSF's second affirmative defense that Wand was either contributorily negligent or the sole proximate cause of his injuries as pertinent to Count I of his complaint. For the following reasons, Wand's motion [#26] is granted.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986);

---

[1] Now known as the BNSF Railway Company.
[2] This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 45 U.S.C. § 56.

1

*Vision Church* v. *Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). The court must not, however, make credibility determinations or weigh the evidence. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Abdullahi* v. *City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. The court must construe all facts in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255; *Abdullahi*, 423 F.3d at 773. The non-movant cannot, however, rest on bare pleadings alone but must use the above evidentiary tools to designate specific material facts showing a genuine issue for resolution at trial. *Celotex*, 477 U.S. at 324; *Springer* v. *Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Neither the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, nor "some metaphysical doubt as to the material facts" establishes a genuine issue for resolution at trial. *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Such an issue exists only if a rational jury could rule for the non-movant based on the available evidence. *Anderson*, 477 U.S. at 252.

## BACKGROUND

On July 11, 2008, Wand was employed by BNSF as a conductor at the Logistics Park-Chicago intermodal facility. Pl.'s Stmt. of Undisputed Facts ¶ 3, hereinafter "PSF ¶ ___." As a conductor, Wand was required to climb on and off the railcars, using ladders and handholds or

grab irons attached to the railcars for that purpose.³ PSF ¶ 4. Under BNSF's General Code of Operating Rules, employees were required to "check the condition of equipment or tools they use to perform their duties. Employees must not use defective equipment or tools until they are safe to use." Def.'s Additional Facts ¶ 26, hereinafter "DSF ¶ ___." Likewise, BNSF's Train, Yard and Engine Safety Rules required employees to "[i]nspect tools and equipment prior to use" and "[r]epair and remove from service those that fail inspection." DSF ¶ 27. Wand was trained in these rules. DSF ¶ 24.

At around 2:30 A.M. on July 11, 2008, Wand was at work in the Logistics Park-Chicago railyard, in an area where the lighting was poor. DSF ¶ 44; Ex. J to PSF at 86:1, hereinafter "Wand Dep." Wand approached a ladder that was mounted at a corner of a railcar in order to set a handbrake. PSF ¶ 5. The ladder had handholds or grab irons at the top of the two "ladder stiles" (that is, the vertical bars that comprised the sides of the ladder).⁴ PSF ¶ 8. The ladder stiles were bolted to the railcar, DSF ¶ 61, but the right ladder stile had been damaged and subsequently repaired with a weld. PSF ¶ 17. The track lay on a raised trackbed of rock and gravel so that the stirrup at the bottom of the railcar's ladder was roughly five feet above ground. DSF ¶¶ 42, 43.

Only Wand has provided an account of what happened next. Prior to mounting the ladder, he did not physically test, grab, or shake the ladder. DSF ¶ 32. Wand put his left hand

---

³ "[T]he parties' references to grab irons and handholds are interchangeable." *Kahle* v. *Cal. N. R.R., Inc.*, No. C 03-4819 MMC, 2005 WL 645942, at *3 n.3. (N.D. Cal. March 18, 2005).

⁴ The court prefers to describe the device at issue as a "stile" rather than a "style" as the parties spell it, as in the old nursery rhyme, "There was a crooked man . . . He found a crooked sixpence upon a crooked stile . . . ." *See* Webster's Third Int'l Dictionary at 2243 (1981) (defining **stile** as "one of the vertical members in a frame or panel (as a door or sash) into which the secondary members are fitted"); *compare id.* at 2271 (after six-and-one-half columnar inches of definitions of **style** lastly referring to **style** as "*archaic var of* STILE").

3

on the left handhold, his left foot in a stirrup, and then grabbed the right handhold at the top of the right ladder stile to pull himself onto the car. Wand Dep. 86-87. At this point, the ladder stile and attached handhold broke off the car, and Wand fell to the ground backwards.[5] PSF ¶¶ 7, 9.

After the accident, Wand reported his injury to David Hayward, the engineer on his train. PSF ¶ 10. Hayward examined Wand's back and found that "'pretty much the whole back' was red." *Id.* Hayward went to investigate the railcar, saw the right grab iron on the ground, and noticed that it had come off the railcar that Wand had attempted to climb. PSF ¶ 11; Ex. L to PSF at 15:22-16:14. Wand's injury was reported to Harold Kirman, the terminal manager and trainmaster on duty, and Wand subsequently was taken to a hospital. PSF ¶ 12. Kirman wrote up a report of the incident, PSF ¶ 13, and commissioned an inspection of the railcar by Michael Colesby, a general foreman at BNSF. Ex. G to PSF. Colesby examined the railcar and concluded that the ladder stile had "broken at [an] old weld" and that this had constituted an "improper repair" to the ladder. *Id.*

Wand claims that he "immediately felt pain in [his] lower back" on hitting the ground. Wand Dep. 91:2. The day after the accident, he was treated by a Dr. Arndt at the Quincy Medical Group, who referred him to Dr. Shawn Irvine, a chiropractor, *id.* at 111-12, whom Wand had previously seen for back pain on three occasions in 2004, 2005, and 2006.[6] Ex. V to DSF at 6-7, 19, 29. Wand states that Dr. Irvine tried to "pop his back," which only exacerbated Wand's pain. Wand Dep. 112-14. Wand returned to Dr. Arndt, who prescribed medication and physical therapy. *Id.* at 114-17. Wand found these treatments unhelpful and saw a Dr.

---

[5] BNSF has not provided an alternate account to explain how the handhold broke off the car and has instead just emphasized that no one witnessed the incident.

[6] Wand may also have once visited another chiropractor prior to seeing Dr. Irvine. DSF ¶ 59.

4

Schoedinger in St. Louis at the recommendation of several associates. *Id.* at 118. By this time, Wand had "major, severe pain in [his] lower back and into [his] buttocks," occasionally "radiating downward" into his legs; he described the pain as "overwhelming." *Id.* at 121:13-19, 122:2. By the second time that Wand visited Dr. Schoedinger, he had also developed "severe," "excruciating," and "just terrible" headaches. *Id.* at 122. Wand had an MRI during his second visit to Dr. Schoedinger, *id.* at 131-32, and ultimately Dr. Schoedinger performed a cervical operation on Wand in January 2009. *Id.* at 127. The surgery eliminated Wand's headaches. *Id.* at 128. Wand continues to have limited range of motion in his neck. *Id.* at 128-31.

## DISCUSSION

### I. SAA Violation

FELA is a general negligence statute; it "neither prohibits nor requires specific conduct by a railroad." *Waymire* v. *Norfolk & W. Ry. Co.*, 218 F.3d 773, 775 (7th Cir. 2000). The SAA is substantively, if not formally, an amendment to FELA, *Urie* v. *Thompson*, 337 U.S. 163, 189, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949), and imposes an absolute duty on railroads to provide safe equipment. *DeBiasio* v. *Ill. Cent. R.R.*, 52 F.3d 678, 683 (7th Cir. 1995). The SAA does not create a private right of action, but rather allows employees injured by SAA violations to sue under FELA. *Crane* v. *Cedar Rapids & Iowa City Ry. Co.*, 395 U.S. 164, 166, 89 S. Ct. 1706, 23 L. Ed. 2d 176 (1969).

In order to recover under FELA, a plaintiff must prove actual negligence by the defendant. The violation of a safety statute constitutes negligence as a matter of law under the SAA. *Urie*, 337 U.S. at 189 ("[The SAA] dispense[s], for the purposes of employees' suits, with the necessity of proving that violations of the safety statutes constitute negligence; and making

5

proof of such violations is effective to show negligence as a matter of law."); *Chi., Milwaukee, St. Paul & Pac. R.R. Co.* v. *Alva Coal Corp.*, 365 F.2d 49, 54 (7th Cir. 1966) ("[V]iolations of the Safety Appliance Acts constitute negligence *per se*."). Accordingly, an employee can recover under FELA for injuries caused in whole or in part by a violation of the SAA. *See Crane*, 395 U.S. at 166 ("[T]he injured employee is required to prove only the statutory violation and thus is relieved of the burden of proving negligence."). For liability to be found for an SAA violation, however, a plaintiff must also establish that his injury was caused by the violation. *See Rogers* v. *Mo. Pac. R.R. Co.*, 352 U.S. 500, 507 n.13, 77 S. Ct. 443, 1 L. Ed. 2d 493 (1957) ("Proof of violation of certain safety-appliance statutes without more proves negligence . . . . The only issue then remaining is causation."). "Plaintiffs' burden in a FELA action is . . . significantly lighter than it would be in an ordinary negligence case." *Lisek* v. *Norfolk & W. Ry. Co.*, 30 F.3d 823, 832 (7th Cir. 1994). Proximate cause need not be shown; rather, liability will be established when "employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought." *Rogers*, 352 U.S. at 506.

As relevant to Wand's claims, the SAA provides that "a railroad carrier may use or allow to be used on any of its railroad lines . . . a vehicle only if it is equipped with . . . *secure ladders* . . . and, if ladders are required, *secure handholds or grab irons* on its roof at the top of each ladder" and "a vehicle only if it is equipped *with secure grab irons or handholds* on its ends and sides for greater security to individuals in coupling and uncoupling vehicles." 49 U.S.C. § 20302(a) (emphasis added).

Wand claims that "secure," as used in the SAA, means "firmly fastened" and "without defect and secure as to construction, installation, maintenance and intended use." *Roe* v. *Port*

*Terminal R.R. Ass'n*, 620 S.W.2d 870, 874 (Tex. Civ. App. 1981). Courts have debated whether "secure" per the SAA can be stretched to mean "safe" more generally. *Compare Collins* v. *S. Pac. Co.*, 286 F.2d 813 (9th Cir. 1961) (under the SAA, grab irons need only be secure, not safe in general), *and Raudenbush* v. *Balt. & Ohio R.R. Co.*, 160 F.2d 363 (3d Cir. 1946) (presence of snow and ice on equipment did not make equipment unsecure and did not violate the SAA), *with Davis* v. *Reynolds*, 280 F. 363 (4th Cir. 1922) (whether a "slick" step was "unsafe" and thus violated the SAA was a question for the jury). The court need not decide this issue, however, as it is uncontested that a "secure" appliance must, at the very least, be "securely fastened" to the railcar. *See Knight* v. *Chi. & N. W. Ry. Co.*, 123 N.E.2d 128, 132, 3 Ill. App. 2d 502 (1954); *see also Davis* v. *Wolfe*, 263 U.S. 239, 240-41, 44 S. Ct. 64, 68 L. Ed. 284 (1923) (affirming that a grab iron with a "play or movement of about an inch" was "loose and defective" and in violation of the SAA).

The parties agree that the ladder was insecure. Wand asserts that the ladder stile and attached handhold broke off the railcar as he was climbing it. PSF ¶¶ 9, 11. BNSF argues that "an examination of the angle iron piece which contained the hand hold [sic] by a Metallurgical Engineer, Dan Bullen, indicates that about three-fourths of the fracture site of the angle iron support for the handhold was compromised prior to the final break" and that if Wand had touched the handhold prior to grabbing onto it, he would have felt that "the handhold was unstable by creating movement of the handhold structure." Def.'s Resp. at 4; *see also* DSF ¶¶ 34, 35. BNSF acknowledges that the ladder was "compromised" and "unstable," essentially admitting that it was not securely fastened. *See Davis*, 263 U.S. at 240-41; *Stanczak* v. *Pa. R.R.*

7

*Co.*, 174 F.2d 43 (7th Cir. 1949) (a "loose" appliance violated the SAA). Thus, there is no dispute that BNSF was in violation of the SAA.

## II. Contributory Negligence

BNSF's second affirmative defense alleges, in part, that the "failure of plaintiff to exercise ordinary care for his own safety caused, *in whole* or *in part*, the alleged occurrence and the injuries and damages alleged . . . ." Answer Second Defense ¶ 1 (emphasis added). For negligence claims under FELA, contributory negligence does not bar recovery but can reduce damages. *Carter* v. *Atlanta & St. Andrews Bay Ry. Co.*, 338 U.S. 430, 435-36, 70 S. Ct. 226, 94 L. Ed. 236 (1949). If a claim is based on a violation of the SAA, however, proof of the violation not only establishes negligence per se, but also "eliminates contributory negligence as a consideration for any purpose." *Rogers*, 352 U.S. at 507 n.13 (citing *Coray* v. *S. Pac. Co.*, 335 U.S. 520, 69 S. Ct. 275, 93 L. Ed. 208 (1948)). In such actions, "the railroad is deprived of the defenses of contributory negligence and assumption of risk." *Crane*, 395 U.S. at 166. As discussed above, it is undisputed that there was a violation of the SAA. Accordingly, contributory negligence may not be used as a defense to Count I.

## III. Causation

BNSF's second defense also alleges that Wand was the sole proximate cause of his injuries. Answer Second Defense ¶ 1. BNSF rightly points out that, even in actions founded on violations of the SAA, "[p]roof that the employee's own negligence was the *sole* cause of his or her injury is a valid defense because it eliminates the possibility that the regulatory violation contributed in whole or in part to the injury." *Walden* v. *Ill. Cent. Gulf R.R.*, 975 F.2d 361, 364 (7th Cir. 1992).

8

In order to survive summary judgment on the second defense, BNSF must produce sufficient evidence to show that a reasonable jury could accept its defense. *See Celotex*, 477 U.S. at 324; *Springfield Oil Servs., Inc.* v. *Mermelstein*, 914 F. Supp. 258, 264 (N.D. Ill. 1996). More precisely, BNSF must show sufficient evidence that a reasonable jury could accept that Wand's negligence *alone* caused the accident in question, without the insecure ladder playing *any part*. *See Rogers*, 352 U.S. at 506 (standard of causation for the employer in SAA-derived suits is whether "employer negligence played any part, even the slightest, in producing the injury.").

BNSF argues that Wand negligently failed to properly inspect the ladder prior to mounting it, and that, had he done so, he "would have been able to determine the handhold was unstable" and "compromised." Def.'s Resp. at 4; *see also* DSF ¶¶ 34, 35. BNSF's claim is premised on a scenario in which Wand negligently failed to notice that the ladder in front of him was not secure, negligently attempted to climb it, and fell when the insecure ladder broke. Under this scenario, Wand would not have fallen if not for the insecure ladder. Accordingly, the ladder would obviously have played well more than "any part, even the slightest, in producing the injury," *Rogers*, 352 U.S. at 506, and Wand's negligence, if any, could not have been the sole cause.

A similar argument was made by the defendant in *Robb* v. *Burlington N. & Santa Fe R.R. Co.*, 100 F. Supp. 2d 867 (N.D. Ill. 2000). In rejecting this argument, the court stated:

> [T]he Railway's argument that [plaintiff's] injury was caused by his alleged violation of safety rules rather than the condition of the hand brake is not to the point. The Railway cites *Beimert* v. *Burlington Northern*, 726 F.2d 412 (8th Cir. 1984), but since in this circuit, the railroad's duty under the [SAA] is "absolute," the defendant cannot get around this rule by presenting what is for all practical purposes a contributory negligence defense as a causation argument.

9

*Robb*, 100 F. Supp. 2d at 871 n.3. BNSF's case law is not to the contrary. BNSF cites the Eighth Circuit as holding that a rail employee's disregard of a safety rule can bar recovery. *See Chi., St. Paul, Minneapolis & Omaha Ry. Co.* v. *Arnold*, 160 F.2d 1002, 1006-07 (8th Cir. 1947).[7] The following year, however, the Eighth Circuit was careful to limit the reach of *Arnold* to fact patterns in which it "can legitimately be said . . . that the violation of the rule or order actually was the sole *efficient* cause of the employee's injury." *Henwood* v. *Coburn*, 165 F.2d 418, 424 (8th Cir. 1948) (emphasis added). On the record before the court, Wand's alleged negligence could not have been the "sole efficient cause" of the accident, as the SAA violation played at least "any part, even the slightest, in producing the injury."[8] To find otherwise would be to let BNSF evade the ban on contributory negligence in cases based on SAA violations. *See Robb*, 100 F. Supp. 2d at 871 n.3.[9]

BNSF also argues that whether Wand's negligence is the "sole cause" is properly determined by a jury. *See Taylor* v. *Ill. Cent. R.R. Co.*, 8 F.3d 584 (7th Cir. 1993). But while *Taylor* stands for the proposition that the issue of sole cause *may* reach the jury, it does not free the defendant from its burden of producing sufficient evidence to show an issue of fact in order

---

[7] *Arnold* concerns a general FELA violation, in which contributory negligence can have a legitimate role, in contrast to cases involving SAA violations. *See Rogers*, 352 U.S. at 507 n.13; *Carter*, 338 U.S. at 435-36.

[8] Furthermore, the Seventh Circuit recently observed that early FELA cases frequently held that FELA had not altered the basic common law requirements of proximate cause (which include barring recovery for an employee who has violated a safety rule). While "[t]hese cases never have been overruled explicitly . . . 'such cases are definitely inconsistent with later decisions and it is safe to say would not be followed today,'" *McBride* v. *CSX Transp., Inc.*, 598 F.3d 388, 394 (7th Cir. 2010) (citation omitted), particularly in view of *Coray* and *Rogers*, which "strongly suggest[] that traditional formulations of proximate cause have *no role* in FELA cases." *Id.* at 398 (emphasis added).

[9] *Flanigan* v. *Burlington N. Inc.*, 632 F.2d 880 (8th Cir. 1980) and *Meyers* v. *Union Pac. R.R. Co.*, 738 F.2d 328 (8th Cir. 1984), cited by BNSF to argue that Wand's negligence can be established by safety rule violations, are not relevant, since BNSF is prohibited from arguing contributory negligence and has not alleged sufficient evidence that Wand's negligence, if any, could have been the sole cause of the accident.

to survive summary judgment on an affirmative defense.  *See Celotex*, 477 U.S. at 324; *Springfield Oil Servs.*, 914 F. Supp. at 264.  There is no dispute that the SAA was violated and that Wand was injured.[10]  BNSF has not raised more than "metaphysical doubt" as to Wand's account of his fall, which is not enough to create a genuine issue as to causation.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  On the record before the court, no reasonable jury could fail to find that BNSF's violation of the SAA at least partially caused Wand's injuries.  BNSF's own argument assumes that Wand fell and hurt himself because he tried to climb an insecure ladder.  This not only forecloses a defense of "sole proximate cause."  It also indicates that the accident could not have happened without the ladder's defects and that Wand's injury was at least partially caused by BNSF's violation of the SAA.  *See Rogers*, 352 U.S. at 506.

Thus, because there is no question that the SAA was violated, that this violation caused, at least in part, Wand's injury, and that Wand's negligence, if any, was not the sole cause of his injury, the court will grant Wand's motion for summary judgment as to liability and BNSF's second affirmative defense on Count I of Wand's complicaint.

## CONCLUSION AND ORDER

---

[10] The extent of Wand's injuries, of course, remains outstanding.

For the foregoing reasons, Wand's motion for partial summary judgment [#26] is granted. Summary judgment is entered in Wand's favor on the issues of liability and BNSF's second affirmative defense on Count I of his complaint. This case will be called for a status hearing on September 21, 2010, at 8:30 a.m.. The parties are instructed to engage in a sincere effort to resolve this litigation and to report on these efforts at the status hearing.

Dated: August 2, 2010          Entered: _____
                                         JOAN HUMPHREY LEFKOW
                                         United States District Court Judge